# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 08 C 50091 | DATE | 5/31/2012 |
| CASE TITLE | Scott vs. City of Rockford, et al. | | |

**DOCKET ENTRY TEXT:**

For the reasons stated below, the court grants defendants' motion for summary judgment in part and denies it in part.

*Philip G. Reinhard* (signature)

■ [ For further details see text below.]  Electronic Notices.

## STATEMENT - OPINION

Plaintiff, Eric Scott, filed a complaint pursuant to 42 U.S.C. § 1983 against defendants, the City of Rockford, Illinois, and Rockford police officers, Rosemary Matthews, Daniel Basile, Joshua Grover, Paul Gallagher, and Juan Tapia, alleging excessive force in violation of the Fourth Amendment and arising out of his arrest related to various traffic-related violations. All defendants have moved for summary judgment, asserting that there was no excessive force used, or alternatively, that the individual defendants are entitled to qualified immunity. Plaintiff has responded, and defendants have filed a reply.

**Background**

This case arose out of an incident that occurred on or about May 25, 2007.[1] Plaintiff had just left a bar on East State Street in Rockford where he had consumed six beers,[2] and drove a short distance east on East State Street to the intersection with Alpine Road. According to plaintiff, he was sitting in the left turn lane waiting for the red light to change when an individual in the car next to his exited and approached his car. Fearful of the approaching stranger, plaintiff drove through the red light, turning left (north) onto Alpine Road. Once he realized that there was a police car behind him with its emergency lights activated, he turned east onto Raven Street which is one block north of East State Street. He then pulled his vehicle to the curb and stopped on Raven Street less than one block from Alpine Road. He immediately exited the vehicle with his hands raised and his back to the officers.

At that point, he was forced to the ground with his face striking the pavement first. He also felt someone grab his neck and hands. According to plaintiff, he did not struggle and was handcuffed immediately. He also "felt a knee on [his] jaw," and also on his back. He later learned that he suffered a facial fracture, a broken nose, a broken jaw, and facial abrasions.

Basile testified in his deposition that he and his partner were sitting in their unmarked squad car on East State Street at the intersection with Alpine Road. He observed the driver of the vehicle in the left turn lane flashing "gang signs" with his hands. When he exited his squad car and approached the car it suddenly drove off turning left through the red light. According to Basile, he was wearing a jacket with the word police on the front.

Grover, who was in an unmarked squad car in front of Basile's car activated the red lights and siren and pursued plaintiff's vehicle north on Alpine Road. According to Grover, plaintiff was driving "pretty quick." Grover followed plaintiff onto Raven Street where he observed him drive about one block then come to a complete stop.

According to Grover, plaintiff exited the vehicle and appeared ready to flee. Grover caught up to plaintiff when plaintiff was four to five steps from plaintiff's car. As he approached, Grover was yelling "police, stop," but he did not think plaintiff acknowledged him.

Grover testified that he grabbed plaintiff's arm in an effort to restrain him but he tried to pull away. Grover ordered plaintiff to the ground, but he did not comply. At that point, he used a technique know as an armbar takedown to force plaintiff to the ground. Plaintiff went to the pavement, and while Grover was not sure, he admitted plaintiff could have struck the pavement face first.

Once he had plaintiff on the ground, he attempted to handcuff him but plaintiff struggled and resisted being handcuffed. As a result, Grover applied a "headpin." This restraint technique involves applying pressure with both hands to the back of the head and "secures their head against the ground." It will prevent the rest of the body from moving and allows for application of handcuffs. It does not involve the use of body weight, but rather, "pressure using your arms." Grover also admitted that an officer could use the technique to drive a suspect's head into the pavement as punishment if he wanted to but that his intent was to use just enough force to control plaintiff's movements. Grover was facing plaintiff's body when he applied the headpin technique.

After plaintiff was handcuffed, it took a few moments for him to calm down. At that point, the officers sat him up and Grover observed the injuries to plaintiff's face. Grover described the injuries as appearing to be "road rash-type," and that plaintiff declined medical attention at that time.

Plaintiff was then turned over to other officers for purposes of investigation for driving under the influence of alcohol. Plaintiff was subsequently transported to the public safety building and later to a local hospital for treatment of his injuries.

Plaintiff was eventually charged with several traffic violations, including driving under the influence, and resisting arrest. He eventually pleaded guilty to driving under the influence and attempted resisting arrest.

**Applicable Law**

In considering a summary judgment motion, the court views all facts and construes all reasonable inferences in a light most favorable to the nonmoving party. Fleming v. Livingston County, Illinois, 674 F. 3d 874, 878 (7th Cir. 2012). Summary judgment is proper if the movant shows there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Fleming, 674 F. 3d at 878.

Whether an officer uses excessive force during an arrest is determined under an objective reasonableness standard. Smith v. City of Chicago, 242 F. 3d 737, 743 (7th Cir. 2001). This assessment is made in light of the facts and circumstances confronting the officer and not in regard to his underlying intent or motivation. Smith, 242 F. 3d at 743 (citing Graham v. Connor, 490 U.S. 386, 397 (1989)). The court must consider the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether he was actively resisting arrest or attempting to evade arrest by flight. Smith, 242 F. 3d at 743. The court balances the amount of force used in relation to the danger posed to the community or the arresting officer. Smith, 242 F. 3d at 743.

Additionally, the doctrine of qualified immunity shields from liability officers who act in ways they reasonably believe to be lawful. Chelios v. Heavener, 520 F. 3d 678, 691 (7th Cir. 2008). This defense provides ample room for mistaken judgment and protects all but the plainly incompetent and those who knowingly violate the law. Chelios, 520 F. 3d at 691. In the excessive force context, to defeat qualified immunity, a plaintiff must show that there is either a closely analogous case that establishes a right to be free from the type of force the officer used on him or that the force used in effecting an arrest was so "plainly

excessive that a reasonable officer would have been on notice that such force is violative of the Fourth Amendment." Chelios, 520 F. 3d at 691-92.

**Claims Analysis**

Initially, the court grants summary judgment in favor of Matthews and Gallagher as plaintiff agrees in his response that they both "should be properly dismissed." The court also grants summary judgment in favor of the City of Rockford as there are no allegations in the complaint or any evidence in the record that the alleged use of excessive force was pursuant to any official policy or custom. See Estate of Rice v. Correctional Medical Services, 675 F. 3d 650, 675 (7th Cir. 2012). Thus, the remainder of this order will address summary judgment only as to Grover, Basile, and Tapia.

There is no evidence that Basile or Tapia utilized any sort of excessive force against plaintiff. According to plaintiff, he had his back to the officers at the time he was taken to the ground and that he could not see which officers used what force against him. Further, Grover testified that he did not observe any other officer apply any force to plaintiff beyond that necessary to remove his arms from under his body and handcuff him. There is simply no evidence that either Basile or Tapia applied any force that caused any of plaintiff's facial injuries. While Basile admits that he struck plaintiff in the ribs three times with his knee in an effort to get him to loosen his left arm, such force is not excessive, particularly as plaintiff does not complain of any rib-related injuries. Accordingly, Basile and Tapia are both entitled to summary judgment.

That leaves the issue of whether Grover is entitled to summary judgment. The undisputed evidence shows that Grover observed plaintiff commit a relatively serious traffic violation by driving through a red light while turning left at a major city intersection in the late evening hours.[3] Then, while Grover followed in his squad car with the emergency lights and siren operating[4], plaintiff rapidly accelerated north on Alpine Road. Plaintiff then quickly turned onto a side street.

After continuing to drive for about one block on Raven Street, plaintiff pulled over and exited his vehicle. While Grover testified that it appeared to him that plaintiff was preparing to run, the court accepts plaintiff's version that he merely exited the vehicle with his back to the officers and his hands raised.

At this point, Grover approached plaintiff, placed his left arm in a hold and forced him to the pavement. While plaintiff states in his affidavit filed with his response to the summary judgment motion that Grover "[drove] [his] head and face into the concrete or asphalt," that is simply plaintiff's characterization of how he was forced to the ground.[5] According to plaintiff, he suffered several facial fractures and abrasions as a result.

Once Grover forced plaintiff to the ground, Grover applied the headpin technique in an effort to hold plaintiff until he could be handcuffed. Eventually, plaintiff was handcuffed.

Plaintiff's undisputed conduct as viewed by Grover clearly justified his arrest. More importantly, the Graham factors justified Grover's reasonable belief that plaintiff was evading arrest and that some degree of force would be needed to affect the arrest.

The crime at issue, while not overly serious, was serious enough to warrant taking plaintiff into custody. It also is a Class A misdemeanor under Illinois law, carrying a potential sentence of up to one year in jail. Additionally, the manner in which plaintiff drove his vehicle presented an immediate threat to the safety of others on the road, including the officers who were forced to follow him through the red light quickly. Further, from the officers' point of view, plaintiff was actively attempting to resist arrest by fleeing, albeit over a relatively short distance and period of time. When these factors are considered in their totality, a reasonable officer would have concluded that plaintiff presented a risk to the officer and needed to be handcuffed to avoid any further attempts at fleeing or even trying to injure the officers or others.

The use of the additional technique of forcing plaintiff to the pavement with an armbar hold and use of the headpin, however, was not justified under the undisputed facts. This is so because plaintiff, accepting his version as the court must for purposes of the present motion, was not struggling and actively resisting at the time. Plaintiff's prior actions of driving his vehicle in a manner that was both dangerous and indicative of

| STATEMENT - OPINION |
|---|

flight did not alone justify Grover in taking him to the pavement in the fashion he did. Therefore, Grover is not entitled to summary judgment.[6]

    Moreover, Grover is not entitled to summary judgment based on qualified immunity. There is no closely analogous case that establishes a right to be free from the force used in this particular case. Plaintiff has not cited, nor has the court found, any case holding that the forcing of a driver, who appears to be eluding the police, to the pavement before placing him in handcuffs to be an excessive use of force. However, the force used in these circumstances was so plainly excessive that a reasonable officer would have been on notice that such force violated the Fourth Amendment. Grover therefore is not entitled to summary judgment based on qualified immunity as well.

    For the foregoing reasons, the court grants summary judgment in favor of all defendants as to all claims except Grover. The parties are to schedule a settlement conference before Magistrate Judge Mahoney within 30 days of the date of this order.

---

1. Plaintiff estimated the time to be 10:00 or 11:00 pm while Grover estimated it to be around 2:00 am. This dispute is not material to the disposition of the present motion.

2. According to plaintiff, his blood alcohol content as measured by a field test was .152, nearly double the legal limit in Illinois.

3. It cannot be disputed that plaintiff's driving through the red light while turning left was a dangerous maneuver, especially considering the undisputed evidence that he did so while being under the influence of alcohol.

4. While plaintiff asserts that while at the intersection he did not know the officers were actually the police and that he drove the way he did to get from strangers whom he believed to be threatening to him, what matters is what Grover reasonably believed to be happening from his perspective.

5. The court notes that while self-serving affidavits are admissible in a summary judgment proceeding, see Buie v. Quad/Graphics, Inc., 366 F. 3d 496, 506 (7th Cir. 2004), affidavits that contradict prior deposition testimony of the affiant are entitled to "zero weight" in a summary judgment proceeding unless the affiant provides a plausible explanation in the affidavit itself, Beckel v. Wal-Mart Associates, Inc., 301 F. 3d 621, 623 (7th Cir. 2002). To some extent plaintiff's affidavit here is inconsistent with his deposition testimony in that he did not testify in his deposition that he said "I didn't know you guys were cops" upon exiting his vehicle and that he did testify in his deposition that his jaw was broken. However, because such inconsistencies are not material to the outcome, the court will not strike the offending portions of the affidavit.

6. The court is not ruling that use of the armbar technique to force a suspect to the ground is inherently excessive. But in this case, in light of the undisputed facts as viewed in a light most favorable to plaintiff, particularly the injuries to his face, a trier of fact could reasonably find the force used was excessive.